Filed 6/25/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| DEBRA COITO, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | S181712 |
| | ) | |
| v. | ) | Ct.App. 5 F057690 |
| | ) | |
| THE SUPERIOR COURT OF | ) | Stanislaus County |
| STANISLAUS COUNTY, | ) | Super. Ct. No. 624500 |
| | ) | |
| Respondent; | ) | |
| | ) | |
| STATE OF CALIFORNIA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

In California, an attorney's work product is protected by statute. (Code Civ. Proc., § 2018.010 et seq.; all further unlabeled statutory references are to the Code of Civil Procedure.) Absolute protection is afforded to writings that reflect "an attorney's impressions, conclusions, opinions, or legal research or theories." (§ 2018.030, subd. (a).) All other work product receives qualified protection; such material "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (§ 2018.030, subd. (b).)

In this case, we decide what work product protection, if any, should be accorded two items: first, recordings of witness interviews conducted by investigators employed

1

by defendant's counsel, and second, information concerning the identity of witnesses from whom defendant's counsel has obtained statements. Defendant objected to plaintiff's requests for discovery of these items, invoking the work product privilege. The trial court sustained the objection, concluding as a matter of law that the recorded witness interviews were entitled to absolute work product protection and that the other information sought was work product entitled to qualified protection. A divided Court of Appeal reversed, concluding that work product protection does not apply to any of the disputed items. The Court of Appeal issued a writ of mandate directing the trial court to grant the motion to compel discovery.

We conclude that the Court of Appeal erred. In light of the legislatively declared policy and the legislative history of the work product privilege, we hold that the recorded witness statements are entitled as a matter of law to at least qualified work product protection. The witness statements may be entitled to absolute protection if defendant can show that disclosure would reveal its "attorney's impressions, conclusions, opinions, or legal research or theories." (§ 2018.030, subd. (a).) If not, then the items may be subject to discovery if plaintiff can show that "denial of discovery will unfairly prejudice [her] in preparing [her] claim . . . or will result in an injustice." (§ 2018.030, subd. (b).)

As to the identity of witnesses from whom defendant's counsel has obtained statements, we hold that such information is not automatically entitled as a matter of law to absolute or qualified work product protection. In order to invoke the privilege, defendant must persuade the trial court that disclosure would reveal the attorney's tactics, impressions, or evaluation of the case (absolute privilege) or would result in opposing counsel taking undue advantage of the attorney's industry or efforts (qualified privilege).

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings, consistent with our opinion, to determine whether the disputed materials should be produced.

2

On March 9, 2007, 13-year-old Jeremy Wilson drowned in the Tuolumne River in Modesto, California.  His mother, Debra Coito, filed a complaint for wrongful death naming several defendants, including the State of California.  The Department of Water Resources (DWR) is the agency defending the action for the state, represented by the Attorney General.

Six other juveniles witnessed what happened.  There were allegations that all of the juveniles, including the decedent, were engaged in criminal conduct immediately before the drowning.  On November 12, 2008, after codefendant City of Modesto had noticed the depositions of five of the six juvenile witnesses, counsel for the state sent two investigators, both special agents from the Bureau of Investigation of the Department of Justice, to interview four of the juveniles.  The state's counsel provided the investigators with questions he wanted asked.  Each interview was audio-recorded and saved on a separate compact disc.

On January 27, 2009, the City of Modesto began its deposition of one of the four interviewed witnesses.  The state's counsel used the content of the witness's recorded interview in questioning the witness at the deposition.

On February 5, 2009, plaintiff served the state with supplemental interrogatories and document demands.  The interrogatories included Judicial Council form interrogatory No. 12.3, which sought the names, addresses, and telephone numbers of individuals from whom written or recorded statements had been obtained.  The document demands sought production of the audio recordings of the four witness interviews.  The state objected to the requested discovery based on the work product privilege.

Plaintiff filed a motion to compel an answer to form interrogatory No. 12.3 and the production of the recorded interviews.  In support of the motion, plaintiff filed declarations from two of the interviewed witnesses asserting that they had not intended their statements to be confidential.  The state opposed the motion, relying primarily on

*Nacht & Lewis Architects, Inc. v. Superior Court* (1996) 47 Cal.App.4th 214, 217 (*Nacht & Lewis*), which held that recorded witness statements are entitled to absolute work product protection and that information sought by form interrogatory No. 12.3 is entitled to qualified work product protection.

After an April 10, 2009 hearing, and without having reviewed the audio recordings, the trial court issued a written order that relied on *Nacht & Lewis* in denying plaintiff's motion except as to the recording used by the state to examine the witness during the January 27, 2009 deposition. As to that recording, the court reasoned that the state had waived the work product privilege by using the interview to examine the witness during the deposition.

Plaintiff petitioned for a writ of mandate that the Court of Appeal granted. The majority, relying on *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355 (*Greyhound*) and expressly declining to follow *Nacht & Lewis*, concluded that witness interviews and the information sought by form interrogatory No. 12.3 are not entitled as a matter of law to absolute or qualified work product protection. Because defendant's attorney made no showing of entitlement to work product protection in the specific context of this case, the Court of Appeal directed the trial court to compel discovery. Justice Kane wrote a concurring and dissenting opinion. While agreeing that the trial court's order denying discovery should be vacated, he concluded that the recorded interviews were entitled as a matter of law to at least qualified work product protection, whereas the information sought by form interrogatory No. 12.3 must be produced unless the objecting party has made an adequate showing to support a claim of qualified privilege.

We granted review. As with all matters of statutory construction, our review of the Court of Appeal's interpretation of the work product statute is de novo. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.)

4

## II.

California's civil work product privilege is codified in section 2018.030. Subdivision (a) provides absolute protection to any "writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories." (§ 2018.030, subd. (a).) Such a writing "is not discoverable under any circumstances." (*Ibid.*) The term "writing" includes any form of recorded information, including audio recordings. (§ 2016.020, subd. (c) [adopting the definition set forth in Evidence Code section 250].) Section 2018.030, subdivision (b) provides qualified protection for all other work product. Such material "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (§ 2018.030, subd. (b).) Here, we address the work product privilege in the civil context only, as criminal discovery is regulated by a different statute. (Pen. Code, § 1054 et seq.)

The language of section 2018.030 does not otherwise define or describe "work product." Courts have resolved whether particular materials constitute work product on a case-by-case basis (*City of Long Beach v. Superior Court* (1976) 64 Cal.App.3d 65, 71), although they have sometimes taken different approaches. Some courts have attempted to answer the question by distinguishing between "derivative" or "nonderivative" material, or between "interpretative" and "evidentiary" material. (E.g., *Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 68-69 (*Fellows*); *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 647 (*Rodriguez*); *Mack v. Superior Court* (1968) 259 Cal.App.2d 7, 10-11 (*Mack*).) These cases have concluded that only derivative or interpretive material — material created by or derived from an attorney's work reflecting the attorney's evaluation of the law or facts — constitutes work product. Examples of such material include "diagrams prepared for trial, audit reports, appraisals, and other expert opinions, developed as a result of the initiative of counsel in preparing for trial." (*Mack*, at p. 10.) Nonderivative material — material that is only evidentiary in

5

nature — does not constitute work product. Examples of such material include the identity and location of physical evidence or witnesses. (*Ibid.*; *City of Long Beach*, at p. 73.)

Other courts, instead of distinguishing between derivative and nonderivative material, have determined the scope of protected work product by relying primarily upon the policies underlying the work product statute and its legislative history. (E.g., *Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 130-133, 135 (*Dowden*).) Because those policies and the legislative history are instructive in resolving the instant case, we begin by reviewing the origins and development of California's work product privilege.

**A.**

The idea that an attorney's work product should receive protection from discovery was first recognized by the United States Supreme Court in *Hickman v. Taylor* (1947) 329 U.S. 495 (*Hickman*). There, the defendant's counsel interviewed and took statements from the surviving crewmembers of a tugboat accident. (*Id.* at p. 498.) The plaintiff sought the production of any written or oral statements taken from the crewmembers. (*Id.* at pp. 498-499.) After concluding that the statements were not covered by the attorney-client privilege (*id.* at p. 508), the court nonetheless affirmed the denial of the plaintiff's request. The court explained that the plaintiff's request was "simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." (*Id.* at p. 510.)

The court continued: "In performing his various duties, . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

6

That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. . . . But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." (*Hickman*, *supra*, 329 U.S. at pp. 510-512.)

At the time *Hickman* was decided, California law protected work product only through the attorney-client privilege. In response to *Hickman*, the California State Bar's Committee on Administration of Justice (Committee or State Bar Committee) in 1952

7

proposed an amendment to the definition of attorney-client privilege in former section 1881.  (State Bar Com., Ann. Rep., *Proposals for Legislation, Evidence*, 27 State Bar J. 175, 191-192; McCoy, *Cal. Civil Discovery: Work Product of Attorneys* (1966) 18 Stan. L.Rev. 783, 787-788 (McCoy).)  The proposed amendment would have provided that " 'an attorney's working papers, including, but without limitation, witness statements, investigators' reports, appraiser's reports, medical, scientific, economic or other reports, made for the attorney in preparation of or in connection with a trial, [cannot] be examined without the consent of the client.' "  (State Bar Com., Ann. Rep., *supra*, 27 State Bar J. at p. 191, italics omitted.)

However, the proposal was dropped when this court decided *Holm v. Superior Court* (1954) 42 Cal.2d 500.  In *Holm*, which involved allegations of driver negligence in connection with a city bus accident, the court held that written reports by the driver and photographs of the accident scene were protected by the attorney-client privilege, although the plaintiff's own signed statement to an investigator was not.  (*Id.* at pp. 503-504, 508, 510.)  The State Bar Committee concluded that *Holm* "removes many of the problems on 'working papers' of the attorney; and that [the proposed amendment of section 1881] is not necessary at this time."  (State Bar Com., Ann. Rep., *Proposals for Legislation, Evidence* (1954) 29 State Bar J. 224, 240; Note, *Attorney-Client Privilege in California* (1958) 10 Stan. L.Rev. 297, 316, 318.)

In 1957, the Legislature took up consideration of the Discovery Act, modeled on provisions of the Federal Rules of Civil Procedure.  (McCoy, *supra*, 18 Stan. L.Rev. at p. 788.)  Proposed section 2016, subdivision (b), as recommended by the State Bar Committee, permitted the discovery of any relevant information that was "not privileged."  (State Bar Com., Ann. Rep., *Discovery* (1956) 31 State Bar J. 204, 211; McCoy, at p. 788.)  One concern raised during legislative hearings on the proposal was whether "discovery of working papers and materials collected by an attorney in preparation for trial would be discoverable, and whether the courts would follow

8

*Hickman* and other federal cases stating that such material was not always protected." (McCoy, at pp. 788-789; Pruitt, *Lawyers' Work Product* (1962) 37 State Bar J. 228, 233-234 (Pruitt).) In response to this concern, the enacted version of section 2016, subdivision (b) provided that all matters privileged under California law "are privileged against disclosure through any discovery procedure." (Stats. 1957, ch. 1904, § 3, p. 3323.) It further provided that the legislation should not be interpreted to alter the law "with respect to the existence of any privilege, whether provided for by statute or judicial decision, nor shall it be construed to incorporate by reference any judicial decisions on privilege of any other jurisdiction." (*Ibid.*; McCoy, at p. 789; Pruitt, at p. 233.) The text and enactment history of this latter provision left unclear whether California law incorporated *Hickman*'s understanding of protected work product. (McCoy, at pp. 789-790.)

Against this statutory backdrop, this court in 1961 concluded that neither the attorney-client privilege nor the work product doctrine protected nonparty witness statements from discovery. (*Greyhound*, *supra*, 56 Cal.2d at pp. 399, 401.) In *Greyhound*, the plaintiff in a personal injury suit arising from a car accident sought written statements that had been obtained from witnesses by the defendant's insurance adjusters and investigators. (*Id.* at p. 386.) In opposing the discovery request, the defendant argued that the statements fell within the attorney-client privilege. The court rejected the argument and distinguished *Holm*. (*Greyhound*, at pp. 395, 398-399 & fn. 20.) The defendant also argued that the statements were protected under the work product doctrine. (*Id.* at pp. 399-400.) The court rejected this argument as well, noting that the Legislature had not created such a privilege when it enacted the Discovery Act. (*Id.* at p. 401.) "In its essence," the court explained, "the 'work product rule' is a form of federally created privilege. [Citation.] The Legislature expressly refused to extend the concepts of privilege when adopting the discovery procedures. Since privilege is created by statute it should not be extended by judicial fiat. While the *Hickman* case . . . may be

9

persuasive, and its reasoning accepted where applicable to California [citations][,] such should not be accepted as creating a privilege where none existed. We are therefore inclined to the view that the work product privilege does not exist in this state." (*Ibid.*)

In response to *Greyhound*, the State Bar Committee proposed an amendment the following year with the purpose of codifying a work product privilege. (State Bar Com., Ann. Rep., *Amendments of Discovery Act* (1962) 37 State Bar J. 585, 586-587 (1962 Annual Report); *Dowden*, *supra*, 73 Cal.App.4th at p. 132.) As introduced, Senate Bill No. 24 (1963 Reg. Sess.) (Bill No. 24) proposed to amend former section 2016, subdivision (b) to provide that "it is the policy of this state (i) to preserve the rights of parties and their attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to so limit discovery that one party or his attorney may not take undue advantage of his adversary's industry or efforts." (Bill No. 24, as introduced Jan. 8, 1963, p. 2; see 1962 Ann. Rep., *supra*, 37 State Bar J. at pp. 586-587.) Nearly identical language was ultimately enacted as section 2016, subdivision (g). (Stats. 1963, ch. 1744, § 1, p. 3479.)

Bill No. 24, as introduced, also proposed to amend section 2016, subdivision (b) to provide that "the following shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in injustice: (1) the work product of an attorney and (2) *except as provided in Section 2032, any opinion or report of an expert prepared for or in anticipation of litigation and any writing or things created by or for a party or his agent in preparation for or in anticipation of litigation*; provided always that any writing that reflects an attorney's mental impressions, conclusions, opinions or legal theories shall not be discoverable under any circumstances." (Bill No. 24, as introduced Jan. 8, 1963, p. 2, italics added; see 1962 Ann. Rep., *supra*, 37 State Bar J. at p. 587.) The italicized language was later deleted (Bill No. 24, as amended May 17, 1963, p. 2), but the State

10

Bar Committee's proposed language was otherwise included in the enacted version (Stats. 1963, ch. 1744, § 1, p. 3478; *Dowden*, *supra*, 73 Cal.App.4th at p. 133).

Senator Cobey, who introduced Bill No. 24 at the request of the State Bar, explained the deletion of the italicized language above:  "The bill, as amended in the Assembly, does not attempt to define the term 'work product of an attorney' and eliminates from the bill as originally introduced certain language which partially defines the term.  It is believed that by deleting this specific language courts will be enabled to interpret the term in accordance with the large body of case law that has developed in the Federal courts and elsewhere."  (Sen. Cobey, letter to Gov. Brown re Bill No. 24, June 22, 1963, p. 1.)  Senator Cobey's explanation is consistent with a provision included in the final version of the bill, which said:  "The amendments to this act during the course of its passage shall not constitute evidence that the Legislature intended thereby to limit the courts in their interpretation of what constitutes the work product of an attorney."  (Stats. 1963, ch. 1744, § 3, p. 3480 [uncodified provision].)

According to the State Bar Committee's 1962 Annual Report, the 1963 amendments were intended to "protect the lawyer's normal work processes" and "to establish a more desirable balance between 'discovery' and the rights of litigants and prospective litigants to obtain advice of experts, make investigations and do other acts, without fear of unlimited or indiscriminate disclosures to, and use by adversaries."  (1962 Ann. Rep., *supra*, 37 State Bar J. at p. 586.)  The 1963 amendments were crafted to limit discovery "when the facts indicate that 'one litigant is attempting to take advantage of the other' or that there is 'an abusive attempt to "ride free" on the opponent's industry.' [Citation.]"  (*Id.* at p. 588; see *Dowden*, *supra*, 73 Cal.App.4th at p. 133 [finding 1962 Annual Report "use[ful] as an interpretive aid" because "the Legislature enacted the State Bar's proposal almost verbatim"].)  Contemporaneous commentary observed that the 1963 amendments intended to give some work product even greater protection than the qualified protection afforded by *Hickman*.  (See Pruitt, *supra*, 37 State Bar J. at p. 229;

Hazen L. Matthews, Legislative Representative of State Bar, letter to Gov. Brown re Bill No. 24, July 2, 1963, p. 2.)

Although the work product privilege was moved first from section 2016 to section 2018 (Stats. 1986, ch. 1334, §§ 1-2, pp. 4700-4702) and then from section 2018 to its present location (Stats. 2004, ch. 182, §§ 22-23, pp. 824, 830-831), the current text is virtually identical to the version first enacted in 1963.  Section 2018.020 declares:  "It is the policy of the state to do both of the following:  [¶] (a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases.  [¶] (b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts."  Toward that end, section 2018.030 provides:  "(a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.  [¶] (b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."  As noted (see *ante*, at pp. 1, 5), section 2018.030, subdivision (a) provides absolute protection for certain work product, while subdivision (b) provides qualified protection for all other work product.

## B.

In light of the origins and development of the work product privilege in California, we conclude that witness statements obtained as a result of an interview conducted by an attorney, or by an attorney's agent at the attorney's behest, constitute work product protected by section 2018.030.

As mentioned, the Legislature in enacting section 2018.030 did not define "work product" and instead left the term open to judicial interpretation.  From the very inception

12

of judicial recognition of the concept, attorney work product has been understood to include witness statements obtained through an interview conducted by an attorney. The high court in *Hickman* specifically referred to "statements" and "interviews" in its nonexclusive enumeration of items comprising the " 'work product of [a] lawyer.' " (*Hickman*, *supra*, 329 U.S. at p. 511.) And *Hickman* held that the district court in that case improperly ordered the defendant's attorney "to produce *all written statements of witnesses*" and other items that the attorney had obtained through his own interviews. (*Id.* at p. 509, italics added; see *id.* at p. 508 [plaintiff sought "discovery as of right of oral and *written statements of witnesses* whose identity is well known and whose availability to [plaintiff] appears unimpaired" (italics added)].)

The closest we have come to examining the applicability of section 2018.030 to witness statements is our decision in *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 (*Rico*). There, we held that work product "protection extends to an attorney's written notes about a witness's statements" and that "[w]hen a witness's statement and the attorney's impressions are inextricably intertwined," the entire document receives absolute protection. (*Id.* at p. 814.) The question in *Rico* was not whether a witness's statement is itself protected work product, and the document at issue was not "a verbatim record of the [witnesses'] statements" but rather a summary prepared at the request of the defendant's attorney. (*Id.* at p. 815.) *Rico* thus did not speak to the issue now before us.

Nevertheless, in finding the document protected, *Rico*'s observation that " 'its very existence is owed to the lawyer's thought process' " (*Rico*, *supra*, 42 Cal.4th at p. 815, quoting trial court) provides a useful touchstone for our present inquiry. There is no dispute that a statement independently prepared by a witness does not become protected work product simply upon its transmission to an attorney. (See *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119; *Nacht & Lewis*, *supra*, 47 Cal.App.4th at p. 218.) The issue here is what protection, if any, should be afforded where the witness's statement has been obtained through an attorney-directed interview.

13

"In such situations," the Court of Appeal correctly observed, "it can surely be said that the witness statement is in part the product of the attorney's work." The witness statement would not exist but for the attorney's initiative, decision, and effort to obtain it. This essential fact informs our analysis of whether absolute or qualified work product privilege applies to such witness statements.

*Absolute privilege.* It is not difficult to imagine that a recorded witness interview may, in some instances, reveal the "impressions, conclusions, opinions, or legal research and or theories" of the attorney and thus be entitled to absolute protection. (§ 2018.030, subd. (a).) This may occur not only when a witness's statements are "inextricably intertwined" with explicit comments or notes by the attorney stating his or her impressions of the witness, the witness's statements, or other issues in the case. (*Rico*, *supra*, 42 Cal.4th at p. 814.) It also may occur when the questions that the attorney has chosen to ask (or not ask) provide a window into the attorney's theory of the case or the attorney's evaluation of what issues are most important. Lines of inquiry that an attorney chooses to pursue through follow-up questions may be especially revealing. In such situations, redaction of the attorney's questions may sometimes be appropriate and sufficient to protect privileged material. At other times, however, it may not do to simply redact the questions from the record, as the witness's statements will reveal what questions were asked. Moreover, in some cases, the very fact that the attorney has chosen to interview a particular witness may disclose important tactical or evaluative information, perhaps especially so in cases involving a multitude of witnesses. (See *post*, at p. 22.) These are circumstances where absolute work product protection may apply.

We cannot say, however, that witness statements procured by an attorney will always reveal the attorney's thought process. The Court of Appeal below posited a scenario in which an attorney collects statements from witnesses to an accident with no particular foresight, strategy, selectivity, or planning: "What, for example, of the situation in which an attorney sends an investigator to interview all witnesses listed in a

14

police report, and the investigator asks few if any questions while taking the witnesses' statements? Clearly, these statements would reveal nothing significant about the attorney's impressions, conclusions, or opinions about the case." For this reason (and such scenarios do not seem uncommon), we hold that witness statements procured by an attorney are not automatically entitled as a matter of law to absolute work product protection. Instead, the applicability of absolute protection must be determined case by case. An attorney resisting discovery of a witness statement based on absolute privilege must make a preliminary or foundational showing that disclosure would reveal his or her "impressions, conclusions, opinions, or legal research or theories." (§ 2018.030, subd. (a).) Upon an adequate showing, the trial court should then determine, by making an in camera inspection if necessary, whether absolute work product protection applies to some or all of the material.

*Qualified privilege.* Although witness statements obtained through an attorney-directed interview may or may not reveal the attorney's thought process, we believe such statements necessarily implicate two other interests that the Legislature sought to protect in enacting the work product privilege. Based on these interests, we conclude that witness statements procured by an attorney are entitled as a matter of law to at least qualified work product protection under section 2018.030, subdivision (b).

First, when an attorney obtains through discovery a witness statement obtained by opposing counsel through his or her own initiative, such discovery undermines the Legislature's policy to "[p]revent attorneys from taking undue advantage of their adversary's industry and efforts." (§ 2018.020, subd. (b).) Even when an attorney exercises no selectivity in determining which witnesses to interview, and even when the attorney simply records each witness's answer to a single question ("What happened?"), the attorney has expended time and effort in identifying and locating each witness, securing the witness's willingness to talk, listening to what the witness said, and preserving the witness's statement for possible future use. An attorney who seeks to

15

discover what a witness knows is not without recourse. The attorney is free to interview the witness for himself or herself to find out what information the witness has that is relevant to the litigation. As Justice Jackson said in *Hickman*, it may be that the rules of discovery "were to do away with the old situation where a law suit developed into 'a battle of wits between counsel.' But a common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." (*Hickman*, *supra*, 329 U.S. at p. 516 (conc. opn. of Jackson, J.).) Absent a showing that a witness is no longer available or accessible, or some other showing of unfair prejudice or injustice (§ 2018.030, subd. (b)), the Legislature's declared policy is to prevent an attorney from free-riding on the industry and efforts of opposing counsel (§ 2018.020, subd. (b)).

Second, a default rule authorizing discovery of witness statements procured by an attorney would impede the Legislature's intent "to encourage [attorneys] to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases." (§ 2018.020, subd. (a).) If attorneys must worry about discovery whenever they take a statement from a witness, it is reasonably foreseeable that fewer witness statements will be recorded and that adverse information will not be memorialized. As Justice Kane observed below, without work product protection, "no meaningful privacy exists within which an attorney may have sufficient confidence to thoroughly investigate and record potentially *unfavorable* matters." This result would derogate not only from an attorney's duty and prerogative to investigate matters thoroughly, but also from the truth-seeking values that the rules of discovery are intended to promote. Accordingly, we hold that a witness statement obtained through an attorney-directed interview is, as a matter of law, entitled to at least qualified work product protection.

16

## C.

The protection afforded by section 2018.030, subdivision (b) to the witness statements in this case is essentially the same protection that the high court afforded to the witness statements in *Hickman*. There, the court held the statements protected and placed the burden on the party seeking discovery "to establish adequate reasons to justify production," such as unavailability or inaccessibility of the witnesses. (*Hickman*, *supra*, 329 U.S. at p. 512.) Qualified protection of this sort, the court said, is necessary if a lawyer is to discharge his duty "to work for the advancement of justice while faithfully protecting the rightful interests of his clients." (*Id.* at p. 510.)

In reaching a contrary conclusion, the Court of Appeal below relied primarily on *Greyhound*'s conclusion that witness statements are not protected by the work product privilege. Such reliance on *Greyhound* is misplaced. As previously discussed (see *ante*, at pp. 10-12), the Legislature's 1963 amendments to the Discovery Act were intended as a corrective to *Greyhound*. (1962 Ann. Rep., *supra*, 37 State Bar J. at p. 588 [1963 amendments "will afford substantially more protection to 'work product' than" *Greyhound*]; *Dowden*, *supra*, 73 Cal.App.4th at p. 132.) Although the Court of Appeal sought to "balance" the legislatively declared policies in section 2018.020 with the purposes underlying the Discovery Act as a whole (e.g., truth seeking, efficiency, safeguarding against surprise), the 1963 amendments already represent the Legislature's considered judgment on how best to balance the competing interests. (1962 Ann. Rep., *supra*, 37 State Bar J. at p. 586.)

Moreover, *Greyhound* itself is inapt authority for denying work product protection in the present case. In *Greyhound*, the witness statements at issue were made to employees of the defendant, not to defendant's counsel or to agents of defendant's counsel. (*Greyhound*, *supra*, 56 Cal.2d at p. 386.) The statements were only later transmitted to defendant's attorney. (*Id.* at p. 387.) On those facts, it is unsurprising that *Greyhound* said the plaintiff had "failed to indicate that the reasons underlying [the work

17

product] doctrine would be applicable to this proceeding." (*Id.* at p. 401; see *ibid.* ["Facts which give rise to the work product privilege in other jurisdictions may, in some circumstances, indicate an abusive attempt to 'ride free' on the opponent's industry. Such facts are not even hinted at herein . . . ."].) *Greyhound* did not involve a witness statement procured by an attorney through his or her own initiative.

The Court of Appeal also cited several cases suggesting that witness statements made to an attorney do not constitute work product. (E.g., *Fellows*, *supra*, 108 Cal.App.3d at p. 69; *People v. Williams* (1979) 93 Cal.App.3d 40, 63-64; *Rodriguez*, *supra*, 87 Cal.App.3d at p. 647; *Kadelbach v. Amaral* (1973) 31 Cal.App.3d 814, 822.) But those cases address the issue in a conclusory manner without discussing the legislatively declared policy or the history of the work product privilege.

In *Kadelbach v. Amaral*, *supra*, 31 Cal.App.3d at page 822, the court stated simply that "the view [that witness statements made to attorneys constitute work product] is not supported by the authorities." It cited *Mack*, *supra*, 259 Cal.App.2d at page 10 for this proposition. However, *Mack* did not involve an attorney's interview of a witness, nor did it purport to address whether such material constituted work product. In *Rodriguez*, *supra*, 87 Cal.App.3d at page 647, the court said that the portion of an attorney's notes that recorded a witness's statements "[could] not be protected by the attorney's work-product privilege, since recorded or written statements of a prospective witness are considered material of a nonderivative or noninterpretative nature." For that proposition, *Rodriguez* cited *People v. Boehm* (1969) 270 Cal.App.2d 13. But the court in *Boehm* merely recounted, without indicating approval, that the trial court had permitted discovery of witness statements. (*Id.* at p. 21.) Thus, *Boehm* did not suggest, much less hold, that witness statements do not constitute work product. An erroneous citation to *Boehm* for that proposition appears not only in *Rodriguez* but also in Jefferson, California Evidence Benchbook (1972) Meaning of "Work Product" for Attorney's Work-Product Privilege, section 41.2, pages 710 to 711, which in turn was cited by two other cases on

18

which the Court of Appeal relied.  (See *Fellows*, *supra*, 108 Cal.App.3d at p. 69; *People v. Williams*, *supra*, 93 Cal.App.3d at pp. 63-64.)

Underlying these  assertions that witness statements do not constitute work product is the notion that such writings are nonderivative or noninterpretative material that is wholly evidentiary in nature.  (*Fellows*, *supra*, 108 Cal.App.3d at p. 69; *People v. Williams*, *supra*, 93 Cal.App.3d at pp. 63-64; *Rodriguez*, *supra*, 87 Cal.App.3d at p. 647.)  However, as all three justices of the Court of Appeal observed below, a witness statement taken by an attorney possesses both derivative characteristics (i.e., an attorney must put time and effort, and possibly thought and planning, into conducting the interview) and non-derivative characteristics (i.e., the statement may contain information regarding events provable at trial or the identity or location of physical evidence, or it may be useful for impeachment or refreshing the witness's recollection).

While acknowledging that "an attorney could reveal his or her thoughts about a case by the way in which the attorney conducts a witness interview," the Court of Appeal concluded that "competent counsel will be able to tailor their interviews so as to avoid the problem should they choose to do so."  However, as discussed above, a core purpose of the work product privilege is "to encourage [attorneys] to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases." (§ 2018.020, subd. (a).)  Placing the burden on attorneys to tailor witness interviews so as to avoid unwanted discovery is precisely what *Hickman* warned against when it said:  "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . .  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (*Hickman*, *supra*, 329 U.S at p. 511.)

19

In sum, we disapprove *Fellows v. Superior Court*, *supra*, 108 Cal.App.3d 55, *People v. Williams*, *supra*, 93 Cal.App.3d 40, *Rodriguez v. McDonnell Douglas Corp.*, *supra*, 87 Cal.App.3d 626, and *Kadelbach v. Amaral*, *supra*, 31 Cal.App.3d 814 to the extent they suggest that a witness statement taken by an attorney does not, as a matter of law, constitute work product. In addition, *Greyhound*, *supra*, 56 Cal.2d 355, which was decided before the Legislature codified the work product privilege, should not be read as supporting such a conclusion. At the same time, we reject the dicta in *Nacht & Lewis*, *supra*, 47 Cal.App.4th at page 217 that said "recorded statements taken by defendants' counsel would be protected by the absolute work product privilege because they would reveal counsel's 'impressions, conclusions, opinions, or legal research or theories' . . . . [Citation.]" Instead, we hold that a witness statement obtained through an attorney-directed interview is entitled as a matter of law to at least qualified work product protection. A party seeking disclosure has the burden of establishing that denial of disclosure will unfairly prejudice the party in preparing its claim or defense or will result in an injustice. (§ 2018.030, subd. (b).) If the party resisting discovery alleges that a witness statement, or portion thereof, is absolutely protected because it "reflects an attorney's impressions, conclusions, opinions, or legal research or theories" (§ 2018.030, subd. (a)), that party must make a preliminary or foundational showing in support of its claim. The trial court should then make an in camera inspection to determine whether absolute work product protection applies to some or all of the material.

In the present case, we remand the matter for consideration of whether absolute privilege applies to all or part of the recorded witness interviews. If any or all of the interviews are not absolutely protected, the trial court should consider whether plaintiff can make a sufficient showing of unfair prejudice or injustice under section 2018.030, subdivision (b) to permit discovery. We do not disturb the trial court's conclusion that the state waived the work product privilege as to the recording used to examine a witness during the January 27, 2009 deposition.

20

**D.**

In addition to the witness statements, plaintiff sought to compel defendant to answer form interrogatory No. 12.3, which asked: "Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT?" For any such statement, the interrogatory requested (among other things) the name, address, and telephone number of the witness and the date the statement was obtained.

The Court of Appeal reasoned that, because the recorded witness statements themselves were not entitled to work product protection, defendant could not refuse to answer form interrogatory No. 12.3. In so concluding, the majority disagreed with *Nacht & Lewis*, which held that the information sought by form interrogatory No. 12.3 is entitled as a matter of law to qualified work product protection to the extent it consists of recorded statements taken by an attorney. (*Nacht & Lewis*, *supra*, 47 Cal.App.4th at p. 217.) Justice Kane, in his separate opinion below, identified a third approach. He would have adopted a default rule requiring parties to respond to form interrogatory No. 12.3, while permitting parties to make a showing that the responsive material is entitled to qualified or absolute protection. As explained below, the approach suggested by Justice Kane is most consistent with the policies underlying the work product privilege.

At the outset, we note that form interrogatory No. 12.3 — in asking whether a party or its agent has "obtained" a written or recorded witness statement — appears to include within its compass any statement independently prepared by a witness and subsequently obtained by an attorney. Such statements "neither reflect an attorney's evaluation of the case nor constitute derivative material, and therefore are neither absolute nor qualified work product." (*Nacht & Lewis*, *supra*, 47 Cal.App.4th at p. 218.) It follows that "a list of potential witnesses who turned over to counsel their independently prepared statements would have no tendency to reveal counsel's

21

evaluation of the case" (*id.* at pp. 217-218), and compelled disclosure of such a list pursuant to form interrogatory No. 12.3 would invade no work product privilege.

The issue here is whether disclosure of a list of witnesses from whom an attorney took recorded statements at his or her own initiative implicates the work product privilege. Parties in litigation typically know the full universe of witnesses, not least because form interrogatory No. 12.1 requires parties to provide a list of all known witnesses. Thus, form interrogatory No. 12.3 specifically aims to reveal which witnesses an attorney for one party saw fit to ask for a recorded statement.

As discussed above (see *ante*, at p. 14), disclosing a list of witnesses from whom an attorney has taken recorded statements may, in some instances, reveal the attorney's impressions of the case. Take, for example, a bus accident involving 50 surviving passengers and an allegation that the driver fell asleep at the wheel. If an attorney for one of the passengers took recorded statements from only 10 individuals, disclosure of the list may well indicate the attorney's evaluation or conclusion as to which witnesses were in the best position to see the cause of the accident. (See *Hickman*, *supra*, 329 U.S. at p. 511 ["Proper preparation of a client's case demands that [the attorney] . . . sift what he considers to be the relevant from the irrelevant facts . . . ."].) Such information may be entitled to absolute privilege under section 2018.030, subdivision (a). If absolute privilege were inapplicable, such a list may still be entitled to qualified privilege under section 2018.030, subdivision (b) to the extent it reflects the attorney's industry and effort in selecting which witnesses to ask for a recorded statement. Perhaps the attorney devoted significant effort to tracking down bus tickets and passenger logs in order to determine which passengers sat in which seats, and then decided to take recorded statements from the 10 passengers closest to the driver. Even without obtaining the witness statements themselves, the bus company's lawyer would gain valuable information by free-riding on the attorney's identification of the most salient witnesses.

22

Such undue advantage-taking is precisely what the Legislature intended the work product privilege to prevent. (§ 2018.020, subd. (b).)

At the same time, however, we cannot say that it will always or even often be the case that a witness list responsive to form interrogatory No. 12.3 reflects counsel's premeditated and carefully considered selectivity as in the scenario above. As Justice Kane posited in his separate opinion below: "Take, for example, a typical automobile accident. The police report may disclose the existence of several witnesses. If the attorney for one party obtains witness statements from one or more of those individuals whom everyone in the case knows are percipient witnesses, that fact does not show anything definite about the attorney's evaluation of the strengths and weaknesses of the case, attorney strategy or tactics, or even the relative strength of any particular witness. . . . Indeed, a particular witness statement might be in an attorney's file for a host of reasons, including that the person happened to be available when the attorney sent out an investigator." Although the witness statements themselves reflect the attorney's time and effort in taking the statements and are therefore qualified work product (see *ante*, at p. 16), disclosing the list of such witnesses in Justice Kane's scenario does not implicate the problem of one attorney free-riding on the work of another, as no significant work or selectivity went into creating the list.

The instant case presents another scenario in which the work product privilege may be inapplicable. Where it appears that an attorney has sought to take recorded statements from all or almost all of the known witnesses to the incident, compelling a response to form interrogatory No. 12.3 is unlikely to violate the work product privilege. As Justice Kane observed: "In our case, DWR's attorney sent an investigator to interview the eyewitnesses to the drowning. There were six eyewitnesses, although it appears only five were known at the time the statements were sought. DWR's investigator succeeded in interviewing four eyewitnesses and generated four recorded statements. These facts, had they been disclosed in a response to form interrogatory No.

23

12.3, would have revealed nothing of consequence regarding DWR's evaluation of the case, one way or the other." Nor would it have implicated any time or effort expended by DWR's attorney in selecting the witnesses to interview, as it does not appear that any meaningful selection occurred.

Because it is not evident that form interrogatory No. 12.3 implicates the policies underlying the work product privilege in all or even most cases, we hold that information responsive to form interrogatory No. 12.3 is not automatically entitled as a matter of law to absolute or qualified work product privilege. Instead, the interrogatory usually must be answered. However, an objecting party may be entitled to protection if it can make a preliminary or foundational showing that answering the interrogatory would reveal the attorney's tactics, impressions, or evaluation of the case, or would result in opposing counsel taking undue advantage of the attorney's industry or efforts. Upon such a showing, the trial court should then determine, by making an in camera inspection if necessary, whether absolute or qualified work product protection applies to the material in dispute. Of course, a trial court may also have to consider non-party witnesses' privacy concerns. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶¶ 8:298 to 8:299.15, pp. 8C-88 to 8C-89.)

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings, consistent with our opinion, to determine whether the disputed materials should be produced.

LIU, J.

WE CONCUR:   CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.

24

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Coito v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 182 Cal.App.4th 758
**Rehearing Granted**


_____

**Opinion No.** S181712
**Date Filed:** June 25, 2012

_____

**Court:** Superior
**County:** Stanislaus
**Judge:** William A. Mayhew


_____

**Counsel:**

Law Offices of Carcione, Cattermole, Dolinksi, Okimoto, Stucky, Ukshini, Markowitz & Carcione, Joseph W. Carcione, Jr., Gary W. Dolinski and Neal A. Markowitz for Petitioner.

Rose, Klein & Marias and David A. Rosen for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, David S. Chaney, Chief Assistant Attorney General, Manuel M. Medeiros, State Solicitor General, Gordon Burns, Deputy State Solicitor General, James M. Schiavenza, Assistant Attorney General, Steven M. Gevercer and Peter A. Meshot, Deputy Attorneys General, for Real Party in Interest.

O'Melveney & Myers, Paul Salvaty and Michael Reynolds for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Real Party in Interest.

Dennis J. Herrera, City Attorney, (San Francisco) and Danny Chou, Chief of Complex and Special Ligation, for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Gary W. Dolinski
Law Offices of Carcione, Cattermole, Dolinksi, Okimoto, Stucky, Ukshini, Markowitz & Carcione
601 Brewster Avenue, Second Floor
Redwood City, CA  94064
(650) 367-6811

Steven M. Gevercer
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 322-7487