Filed 2/23/15  Greenlight Financial Services v. Internet Brands CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREENLIGHT FINANCIAL SERVICES, INC., | |
| Plaintiff and Respondent, | G048768 |
| v. | (Super. Ct. No. 30-2012-00558307) |
| INTERNET BRANDS, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

iGeneral Counsel and Wendy E. Giberti; Leonard, Dicker & Schreiber and Steven A. Schuman for Defendant and Appellant.

Schiffer & Buus, Eric M. Schiffer and William L. Buus; Rhema Law Group, Rosalind T. Ong and John D. Tran for Plaintiff and Respondent.

# INTRODUCTION

Appellant Internet Brands, Inc., has identified two issues in this appeal. The first is whether the discovery rule was appropriately applied in this breach of contract case. The second is whether an expert report prepared for respondent Greenlight Financial Services, Inc. (Greenlight) was properly employed. Internet Brands contends the discovery rule was improperly applied because the facts pertaining to this breach were easily ascertained, and the expert's report was riddled with errors and should have been excluded.

We note the expert report was not admitted into evidence. The expert used it on the stand to explain the basis of his opinions – along with some other documents that were admitted without objection – but the report itself never became a trial exhibit. Internet Brands did not object to its use during the expert's direct testimony, so there is no basis here for reversal.

As to the application of the discovery rule, this was an issue of fact the jury decided in Greenlight's favor. We do not reweigh evidence or substitute our conclusions for those of the jury, except in the most egregious cases. This is not one of those cases.

We therefore affirm the judgment on special verdict in Greenlight's favor.

# FACTS

Greenlight, founded in 2001, is a direct lender. It provides mortgage services directly to the consumer, eliminating the need for a mortgage broker. Internet Brands owns websites grouped into categories based on the business with which the websites are associated. One of its groups includes websites relating to real estate, mortgages, and financing.

In 2005, Greenlight sued Internet Brands in federal court for trademark infringement. Internet Brands owned an internet domain name, "greenlight.com," that Greenlight maintained was confusingly similar to its mark.

The parties settled in April 2006. The settlement agreement provided, among other things, that the introductory screen of Internet Brands' greenlight.com website would display an entry to three links, left to right – the first to Autos.com for new car prices, the middle one to LoanStore for home loans, and the last to Greenlight Financial Services. The settlement agreement provided that so long as Internet Brands offered home mortgage loan products on its greenlight.com website, it would display the introductory screen exactly as set out in an exhibit to the agreement. If loan products were no longer offered on the greenlight.com website, Internet Brands could remove the introductory screen. The settlement agreement prohibited Internet Brands from altering the introductory screen without Greenlight's written permission.

In March 2011, Greenlight discovered that Internet Brands had changed the introductory screen, without securing written permission. Instead of a link to Auto.com, the introductory screen showed a link to Loan.com ("Check today's lowest mortgage rates"), and instead of a link to LoanStore, the screen shown a link to Loan.App ("Looking for a home loan with the lowest rate?") After further research, Greenlight concluded that Internet Brands had begun breaching the settlement agreement in May 2006, one month after entering into it.

Greenlight sued Internet Brands in March 2012, stating causes of action for breach of contract and promissory fraud. Internet Brands for its part asserted a statute of limitations defense to the breach of contract cause of action, in that it had breached the settlement agreement in 2006, but had not been sued until 2012, more than four years later. Greenlight countered that it had not discovered – and could not have discovered – the breach until 2011; it had no reason to check the Internet Brands website to see whether it was in breach. Internet Brands maintained it had never hidden its website, and anyone who had visited it from 2006 on could have seen that it did not conform to the exhibit in the settlement agreement.

The matter was tried to a jury over six days in March and April 2013.  On the subject of damages, Greenlight's expert, Dr. Matthew Mercurio, testified that Greenlight lost nearly $5 million in revenue as a result of the change in introductory screens.  He prepared a report, which was marked for identification but not admitted into evidence.  He testified as to his opinion on damages, using his report and other documents that were or had been admitted into evidence.  Internet Brands cross-examined him on his opinions and their bases.

The jury returned a special verdict, finding in Internet Brands' favor on the fraud claim and in Greenlight's favor on breach of contract.  It awarded Greenlight $750,000 in contract damages.  On the issue of Greenlight's delayed discovery, the jury was asked "If the harm to [Greenlight] occurred before March 29, 2008, did [Greenlight] prove that before that date, it did not discover facts constituting the breach of contract or breach of covenant of good faith and fair dealing, and with reasonable diligence should not have discovered those facts."  It answered "yes."

Internet Brands moved for a judgment notwithstanding the verdict and for a new trial.  Both posttrial motions were denied.

## DISCUSSION[1]

I.        **The Discovery Rule in Contract Actions**

The parties disagree about the standard of review that should apply to the first issue, the applicability of the discovery rule in contract actions.  Internet Brands asserts we should review this issue de novo, as a matter of law.  Greenlight maintains it is a question of fact.

Whether the discovery rule applies at all in breach of contract actions is a question of law.  It is also a question easily answered.  A number of cases have held that,

---

[1]      Internet Brands' notice of appeal included appeals from the denial of its posttrial motions for a new trial and for judgment notwithstanding the verdict.  Because Internet Brands has provided neither argument nor authority as to why these orders should be reversed, we treat the appeal from them as abandoned.  (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 785.)

under the right circumstances, the discovery rule can indeed counter a limitations defense. (See *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 830-834 (*April Enterprises*); see also *Prudential-LMI Com. Ins. v. Superior Court* (1990) 51 Cal.3d 674, 686-687 [delayed discovery of insured loss]; *Cleveland v. Internet Specialties West, Inc.* (2009) 171 Cal.App.4th 24, 31; *Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App.4th 1, 5-6 (*Pico Partners*).)

Whether the discovery rule applies to a particular set of circumstances is, on the other hand, a question of fact, with the burden on the plaintiff to establish these facts. (*April Enterprises, supra,* 147 Cal.App.3d at p. 833.) The factual issue is whether the plaintiff exercised reasonable diligence in discovering the breach. (*Pico Partners, supra,* 107 Cal.App.4th at p. 7.)

Internet Brands contends the discovery rule of *April Enterprises* and *Pico Partners* does not apply because Internet Brands' breach was obvious to anyone who visited its website. Unlike the breach in *April Enterprises*, which occurred "secretly, within the privacy of [the defendant's] own offices," (*April Enterprises, supra*, 147 Cal.App.3d at p. 832), Internet Brands' breach was on the web for all to see. Moreover, Greenlight should have clicked on the website at least once in the four years after the settlement agreement; it was a failure of diligence not to do so.

This is why we have juries. It was up to the jury to decide whether Greenlight acted reasonably in failing to discover the breach until 2011 or whether reasonable diligence required it to check in with Internet Brands periodically to see whether it was behaving itself. (See *Cleveland v. Internet Specialties West, Inc., supra*, 171 Cal.App.4th at p. 32 [plaintiff had no obligation to monitor defendant to see whether breach had occurred].) The critical question is not whether the defendant hid in the closet to perform its breach, but rather whether the plaintiff, acting reasonably, should have discovered the breach before it did. As the court held in *Pico Partners,* "[A]pplication of the discovery rule was not governed by the presence of deliberate concealment or a

5

heightened level of duty to the plaintiff but by two overarching principles: '[P]laintiffs should not suffer where circumstances prevent them from knowing they have been harmed' and 'defendants should not be allowed to knowingly profit from their injuree's ignorance.'" (*Pico Partners, supra*, 107 Cal.App.4th at pp. 5-6 (fn. omitted).)

The touchstone, as is the case in so much of the law, is reasonableness. After hearing all the facts, a jury decides what is reasonable. This jury decided Greenlight acted reasonably but did not learn it had been harmed. What Internet Brands is asking us to do is to reweigh the evidence and come to a conclusion different from the jury's. The jury heard the evidence about the availability of Internet Brands' website to anyone who cared to look and the reasons Greenlight did not discover the breach until 2011. It decided Greenlight did not have an obligation to monitor the website to make sure Internet Brands was performing according to the settlement agreement. It decided imposing such an obligation was not reasonable. Substantial evidence supports this decision, and we do not disturb a verdict based on substantial evidence.

## II.          Greenlight's Expert's Report

Dr. Mercurio prepared a report of his opinion regarding Greenlight's damages. Although Greenlight offered the report into evidence, it was not received, because Internet Brands objected to it on hearsay grounds. During his testimony, Mercurio used other documents, which became admitted exhibits, in addition to the report to explain to the jury how he arrived at his conclusions. Except for objecting to the admission of his report, Internet Brands allowed Mercurio to testify uninterrupted. Internet Brands cross-examined him and, presumably, pointed out all the errors and discrepancies of which it was aware.

Internet Brands maintains Mercurio's report should have been excluded because it was full of mistakes. But it was never admitted. Internet Brands objected, and the objection was sustained. Internet Brands allowed Mercurio to testify from the report without objection. On this point, there is nothing for us to review.

To the extent Internet Brands is asking us to review Mercurio's trial testimony – as opposed to his report – we cannot do that in the absence of specific objections to specific testimony. Internet Brands has detailed its specific "objections" to the testimony for the first time in its opening brief, nearly a year after trial ended. This is insufficient to invoke review. (See *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563-565 [appellant waited too long and did not make specific objections to damages testimony].)

At the trial level, Internet Brands could have made a motion in limine to point out the problems with Mercurio's testimony. It did make a motion in limine on the subject of Mercurio's opinion, but only one grounded on his statement during his deposition that his opinions were based on "common sense." The basis of Internet Brands' motion was that if he was relying on "common sense," he was not giving an expert opinion. The trial court denied the motion in limine– ruling that the motion went to the weight and not the admissibility of the testimony – but invited counsel to make the appropriate objections as the trial unfolded. No such objections were made.[2]

---

[2] Internet Brands also argues now that Mercurio improperly relied on exhibit 18, a summary of Greenlight's financial history that was admitted into evidence over Internet Brands' hearsay objection. The issue before us is whether Mercurio properly relied on exhibit 18, not whether the court erred in admitting it.

"An expert may generally base his opinion on any "matter" known to him, including hearsay not otherwise admissible, which may "reasonably . . . be relied upon" for that purpose. [Citations.] On direct examination, the expert may explain the reasons for his opinions, including the matters he considered in forming them. However, prejudice may arise if, "'under the guise of reasons,'" the expert's detailed explanation "'[brings] before the jury incompetent hearsay evidence.' [Citations.]' . . . [¶] , Evidence Code section 352 authorizes the court to exclude from an expert's testimony any hearsay matter whose irrelevance, unreliability, or potential for prejudice outweighs its proper probative value." (*People v. Monteil* (1993) 5 Cal.4th 877, 918-919.) The decision as to whether to exclude expert opinion evidence on hearsay grounds is left to the trial court's discretion. (*People v. Nicolaus* (1991) 54 Cal.3d 551, 582.)

7

We should also point out that being wrong is not a violation of the Evidence Code and therefore not a ground for exclusion of an expert's testimony. The thrust of Internet Brands' objections to the Mercurio report, and to the testimony based upon it, is that he made unsupported assumptions and used incorrect data. If that is the case, Internet Brands had several alternatives at the trial level. One was to point out these errors on cross-examination, thereby alerting the jury to the flaws in the evidence. Another was to examine Mercurio out of the jury's presence to convince the trial court the opinion was so lacking in proper foundation as to be excludable. (See, e.g., *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 766-767 [trial court held hearing on expert's damages opinion; excluded it as speculative].) Finally, Internet Brands could have hired its own rebuttal witness to explain to the jury why Mercurio's evidence was full of holes. Instead it confined itself to cross-examination, which was evidently successful to some degree, because the jury awarded only $750,000 in damages, a far cry from the $4.8 million that was Mercurio's low end. Having chosen that strategy, it cannot now adopt another.

We cannot review evidentiary objections made for the first time on appeal. (See Evid. Code, § 353.) And, in fact, Internet Brands is not objecting so much to the admissibility of Mercurio's report as to its accuracy. We could not review that in any event.

---

Internet Brands did not object when Mercurio used exhibit 18 during his direct testimony. Its counsel also asked him questions about it on cross-examination. In the absence of a timely and specific objection in the trial court, Internet Brands cannot now raise this issue on appeal. (See *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 659-660, overruled on other grounds in *Coito v. Superior Court* (2012) 54 Cal.4th 480 [failure to object waives right to complain about erroneously admitted evidence].)

## DISPOSITION

We can find no error.  The judgment on special verdict is affirmed.

Respondent is to recover its costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.

9