[No. B157775. Second Dist., Div. One. July 30, 2002.]

NORA ARMENTA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JAMES JONES COMPANY et al., Real Parties in Interest.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for for partial publication as to the Introduction, Factual and Procedural Background, and the Joint Prosecution Agreement and Prejudice portions of the Discussion only.

526

## COUNSEL

Phillips & Cohen, Eric R. Havian, Harry Litman; Irell & Manella, S. Thomas Pollack, Gregory R. Smith and Stephen Hasegawa for Petitioners.

No appearance for Respondent.

Beck, De Corso, Daly & Kreindler, Bryan D. Daly, Marc S. Harris; Wolff, Ellis & Clausen and Gregory R. Ellis for Real Parties in Interest James Jones Company, Mueller Co., and Tyco International (US), Inc.

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, David S. MacCuish, Kurt Osenbaugh and Todd B. Benoff for Real Party in Interest Watts Industries, Inc.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Qui tam[1] plaintiff Nora Armenta and plaintiffs East Bay Municipal Utility District, City and County of San Francisco, and City of Santa Monica petition for a writ of mandate commanding the superior court to vacate its order of March 27, 2002 and enter a new and different order prohibiting most of that which the March 27 order permits real parties in interest James Jones Company, Mueller Co., Tyco International (US), Inc. and Watts Industries, Inc., to do. Petitioners contend that California law precludes real parties in interest from interviewing and retaining experts who are privy to Armenta's confidential information. In addition, they contend, Armenta has a valid work product interest in Richard Preston Maas's reports, an interest that Los Angeles Department of Water and Power's counsel had no authority to waive. For the reasons stated *post*, we agree and grant the petition for a writ of mandate.

---

[1]"*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" (*Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 768, fn. 1 [120 S.Ct. 1858, 1860, 146 L.Ed.2d 836].)

## FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2001, petitioner Nora Armenta (Armenta) filed a second amended complaint for violation of the California False Claims Act (Gov. Code, § 12650 et seq.). Armenta, a former employee of James Jones Company (Jones), alleges on behalf of the Los Angeles Department of Water and Power (LADWP) and 164 other municipal water systems that Jones, Mueller Co., Tyco International (US), Inc. (Tyco), and Watts Industries, Inc. (Watts) sold the water systems water valves, fittings and other metal water distribution parts that did not meet contract specifications. The parts that Jones sold contained significantly higher levels of lead and zinc than called for in the specifications. As a consequence, lead levels in the water supply possibly could rise and the parts could degrade prematurely.

In April 1999, Armenta's counsel retained Richard Preston Maas (Maas) as an expert on lead leaching from bronze water distribution parts. In May 1999, LADWP also retained Maas. Maas thereafter served as Armenta's and LADWP's joint expert. He produced several reports and memoranda for LADWP concerning the status and results of lead leaching tests he performed. These reports and memoranda, although paid for by LADWP, addressed as well the concerns and views of Armenta's counsel.

In order to protect the work product of their collaborative relationship, counsel for Armenta and LADWP executed a joint prosecution agreement that became effective on January 1, 1999, before either party retained Maas. The agreement confirms "a mutuality of interest in a common and joint prosecution of the action." Its purpose is "to ensure that the exchanges and disclosures of plaintiffs' materials contemplated by the Agreement do not diminish in any way the confidentiality of plaintiffs' materials and do not constitute a waiver of any privilege otherwise available." The agreement expresses the parties' "intention and understanding that communications among us and any joint interviews of prospective witnesses are confidential and are protected from disclosure to any third party by our clients' respective attorney-client privilege and our own work-product privilege."

The agreement further provides that "[i]n order to pursue this joint prosecution of the action effectively we have also concluded that, from time to time, the mutual interests of our respective clients will best be served by sharing documents, factual material, mental impressions, strategies, legal theories, memoranda, interview reports, and other information, including the confidences of each client, all of which will hereinafter be referred to as 'plaintiffs' materials.' In the absence of such sharing, these plaintiffs' materials would be privileged from disclosure to adverse or other parties as

a result of the attorney-client privilege, the attorney work-product privilege or other applicable privileges." The agreement specifically applies to "plaintiffs' materials received from other counsel or *jointly obtained* by any one counsel on behalf of the other counsel." (Italics added.)

The agreement continues in effect regardless of "any conclusion or resolution of the action with respect to any party whose counsel is a signatory to this agreement or with respect to all parties. Counsel agree that they and their clients will continue to be bound by the agreement following any conclusion or resolution of the action."

Maas and counsel for Armenta consulted extensively with two other experts that LADWP retained, Exponent, Inc. and Stephen Rothenberg (Rothenberg). Exponent, Inc., analyzed the results of Maas's testing, conferred with counsel about the anticipated use of Maas's data at trial, and discussed confidential work product information about litigation theories and tactics. Exponent, Inc., prepared written reports. Rothenberg, a toxicologist retained as a consulting expert, with whom counsel discussed litigation theories and strategy, did not prepare written reports.

On October 5, 2001, LADWP sought the trial court's approval of a settlement with real parties in interest to which LADWP had agreed. Article 4, paragraph 4.1 of the settlement agreement states that "LADWP will provide to [real parties] all data, reports and studies generated or developed by or on behalf of the LADWP and its retained experts or consultants in connection with the Action, whether developed before or after the LADWP filed its Complaint-In-Intervention. The materials to be produced to [real parties] include all documents which reflect any analysis, opinions and/or data related to the LADWP and developed by or on behalf of the LADWP's experts or consultants in connection with the Action . . . ."

LADWP took the position that it independently sought and procured test results, reports and other data produced by Maas, Exponent, Inc., and Rothenberg. In LADWP's view, these materials thus were exempt from the joint prosecution agreement, which provides in paragraph four that "nothing contained herein shall limit the right of any counsel to disclose any document or information obtained from that counsel's client or any information that has been *independently obtained* by such counsel." (Italics added.) Moreover, LADWP argued, inasmuch as LADWP's counsel always had represented that she intended to disclose the test results, neither party to the joint prosecution agreement could claim work product privilege in these materials. Finally, as LADWP understood the law, the California Public Records Act (Gov. Code, § 6250 et seq.) superseded the joint prosecution agreement. Petitioners opposed the motion.

At the October 31, 2001 hearing on the motion to approve the settlement agreement, petitioners disputed LADWP's assertion that it had always indicated its intent to make all test results public. Petitioners noted that the only time LADWP's counsel stated she would disclose test results, she was referring to tests conducted by LADWP personnel. In petitioners' view, there never had been any contemplation that the product of joint experts would be disclosed before the conclusion of the litigation. Petitioners would agree to public disclosure of joint experts' test results only if real parties in interest were prohibited from using the results in the litigation.

The court did not dispute that Maas's reports were covered by the joint prosecution agreement. It accepted, instead, the argument that the Public Records Act required a governmental agency settling a case to make public documents underlying the decision to settle. The court asked, accordingly, "Can a joint prosecution agreement trump the Public Records Act?" In the court's view, LADWP had "a responsibility to the people they represent to say, we did this because it is safe, we thought this was the way to go, and we are not jeopardizing the health of the people who reside in the City of Los Angeles by engaging in this type of settlement."

The court overruled petitioners' objections to the settlement agreement. It ruled that "[t]he information sought can be produced and may be produced." It "stayed execution on the implementation of the dissemination of that information for 60 days" to "give the interested parties an opportunity to bring a protective order motion." The court's inclination was "to permit complete dissemination of the information, but do that in the framework of timing of exchange of expert information. In other words, the information . . . would be turned over at the same time the exchange of expert information and all of that comes forward."

Real parties in interest objected to delayed disclosure, in part on the ground that they were unable to duplicate the tests the experts performed. They presented their objections at a December 7, 2001 hearing on an unrelated discovery matter. The court indicated a willingness to entertain a motion for an early exchange of expert information, but reiterated that the public had "a right to know." The court ultimately modified its original ruling and ordered disclosure of LADWP's expert information "forthwith," on condition that the reports not be used until the mutual exchange of expert information.

By written motions, Jones, Mueller Co., Tyco and Watts sought an order permitting them to use Maas's written reports "for any purpose." They also demanded, for the first time, reports prepared by Exponent, Inc. Finally, they

sought leave to interview and retain Rothenberg and Exponent, Inc. Once again, petitioners opposed the motion.

At the March 20, 2002 hearing on the motions, the court granted the motions. It allowed "the use of these reports for all purposes and [permitted] use [of] all of the information provided" by LADWP "in connection with its settlement and . . . permitted [real parties in interest] to conduct further discovery as is necessary to place the information in the proper context . . . ." The court also permitted disclosure of information gained from Exponent, Inc., and Rothenberg. The court found "under the factual scenario that's presented to the Court, and the fact that the DWP has always made known the issue and the argument that they would produce all of this information and make it open to the public, is most compelling to defeat any reasonable expectation argument that the information would remain confidential."

On March 27, 2002, the court issued an order in which it found that "based upon LADWP's obligations to the public under the California Public Records Act . . . , and counsel for LADWP's expressed awareness of those obligations and intention to make the expert information public, the Court overruled plaintiffs' objections to the disclosure of the expert test data and ordered that the reports may be produced." The court ruled that "[d]efendants may use for any and all purposes the LADWP expert information provided to them pursuant to the Court's October 31, 2001 order . . . . This information includes reports by Dr. Richard Maas and by Exponent. Defendants may conduct such further discovery as is necessary to place the disclosed expert information in proper context. Specifically, the Court orders that defendants shall be permitted to contact, interview, and/or depose forthwith representatives of Exponent and Dr. Stephen Rothenberg. Provided, however, that defendants may not, absent further order from the Court or subsequent exchange of expert information, interview or depose Dr. Maas."

The court noted that "[i]n reaching this ruling, the Court finds that the attorney work product protection afforded by Code of Civil Procedure § 2018 does not prohibit defendants from using for any purpose the LADWP expert reports provided to them pursuant to the Court's prior order. Given the absence of any reasonable expectation that the information in question would remain confidential, the Court finds the information is not subject to work product protection. Moreover, even assuming the information generated by the LADWP experts could constitute the joint work product of plaintiffs, any such protection would be qualified, and would therefore give way to the interests of justice. Here, the Court finds that prohibiting defendants from using the LADWP expert information and conducting such discovery as is necessary to place that expert information in context, would

unfairly prejudice defendants in preparing their defense, thereby resulting in an injustice. Accordingly, the avoidance of such injustice would outweigh any qualified work product protection that might arguably apply."

## DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

### Failure to Seek Relief from October 31, 2001 Order*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Waiver by Conduct of Work Product Privilege*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Joint Prosecution Agreement

The joint prosecution agreement recites that the common interest doctrine governs the parties' relationship and cites common interest doctrine cases. It elucidates the close cooperation and sharing of highly sensitive information between Armenta's counsel and LADWP's counsel. Where parties collaborate on work product, "waiver of [the] privilege by one of the joint holders does not bar the other joint holder from asserting it." (*American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 591 [113 Cal.Rptr. 561].)

There is conflicting evidence as to whether Armenta and LADWP collaborated on work product in the form of Maas's data and reports. LADWP's counsel says it was an independent effort. Maas himself says it was a collaborative effort, however, as does Armenta's counsel. The court did not dispute that Maas's reports were covered by the joint prosecution agreement, thus impliedly finding them to be the result of a collaborative effort. Where such work product is the result of collaboration by counsel, all holders of the work product privilege must consent to waiver of the privilege. (*American Mut. Liab. Ins. Co. v. Superior Court, supra*, 38 Cal.App.3d at p. 591.) Armenta does not now and never has consented to waiver.

The question thus becomes whether the reports qualify as work product. The court found that they did not. In the court's view, in light of LADWP's consistently expressed intent to make the test results public, Armenta cannot have had any reasonable expectation of confidentiality.

---

*See footnote, *ante*, page 525.

LADWP did state early in the litigation that it intended to disclose to real parties in interest all test results and would dismiss health allegations in the complaint if the test results established that there was no health risk. LADWP then would make the test results available to the public. The test results of which counsel was speaking, however, were those for which LADWP independently contracted, not those resulting from Maas's work. Counsel later stated that she would waive *her* work product privilege with respect to independent testing results (Maas's conclusions).

LADWP's willingness to make its own independent test results public and counsel's willingness to waive her work product privilege with respect to Maas's work do not establish that Armenta had no reasonable expectation that Maas's reports would remain confidential. Armenta asserts no joint work product interest in LADWP's independent reports. LADWP's counsel executed the joint prosecution agreement *after* revealing her intent to make preliminary test results public. Armenta had every reason, therefore, to trust that counsel would not disclose the jointly obtained Maas test results without Armenta's consent. Nothing counsel said suggested she would act otherwise. Finally, LADWP counsel's willingness to waive her own work product privilege could not vitiate any prospect of confidentiality when Armenta had her own privilege to assert. (*American Mut. Liab. Ins. Co. v. Superior Court, supra*, 38 Cal.App.3d at p. 591.)

In short, Maas's reports do qualify as work product. ▮ As noted in *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1079 [29 Cal.Rptr.2d 693], "reports prepared by an expert as a consultant are protected until the expert is designated as a witness. [Citation.] . . . However, to the extent that said reports embrace counsel's impressions and conclusions, the work-product doctrine gives absolute protection to that information. [Citation.]" (See also *Mack v. Superior Court* (1968) 259 Cal.App.2d 7, 10 [66 Cal.Rptr. 280].)

▮ The joint prosecution agreement likewise provides full protection to such information. Parties with common interests may share confidential information without waiving applicable protections. (*U.S. ex rel. Burroughs v. DeNardi Corp.* (S.D.Cal. 1996) 167 F.R.D. 680, 68.) Inasmuch as the superior court impliedly accepted evidence that the reports were the result of Armenta's and LADWP's joint collaboration, LADWP's counsel had no authority to waive the work product privilege on Armenta's behalf. (*American Mut. Liab. Ins. Co. v. Superior Court, supra*, 38 Cal.App.3d at p. 591.)

With respect to Exponent, Inc., and Rothenberg, Armenta only challenges real parties' right to interview, depose or retain these experts, with whom,

the uncontradicted evidence shows, Armenta's counsel shared confidential information. She does not challenge disclosure of Exponent, Inc.'s report.

■ The work product doctrine protects confidential communications even if those communications do not result in retention of the potential expert, provided that the party asserting the privilege had a reasonable expectation of the communications' confidentiality. (*Shadow Traffic Network v. Superior Court, supra,* 24 Cal.App.4th at p. 1080.) The same principle should apply to communications with retained experts that one decides not to call as witnesses.

Under the terms of the joint prosecution agreement and the express declaration of Armenta's counsel, Armenta clearly had a reasonable expectation that communications made to Exponent, Inc., and Rothenberg would remain confidential. There is no evidence to the contrary. The superior court therefore erred in permitting real parties in interest to interview, depose and retain Exponent, Inc., and Rothenberg.

*Public Records Act**

. . . . . . . . . . . . . . . . . . . . . . . . . .

*Prejudice*

■ Under Code of Civil Procedure section 2018, subdivision (c), any "writing that reflects an attorneys' impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." Any other writing is not discoverable "unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (*Id.,* subd. (b).) Unfair prejudice results where the party seeking discovery establishes that there exists " 'no adequate substitute' " for the material generated by the expert. (*County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 654, fn. 4 [271 Cal.Rptr. 698].) Conversely, when the party has equivalent opportunity to generate comparable evidence in its own case presentation, there is no unfair prejudice. (See, e.g., *Trade Center Properties, Inc. v. Superior Court* (1960) 185 Cal.App.2d 409, 411 [8 Cal.Rptr. 345].)

■ The material real parties in interest seek to discover clearly comes within the qualified privilege expressed in Code of Civil Procedure section

---

*See footnote, *ante,* page 525.

2018, subdivision (b). The question thus is whether substantial evidence supports the superior court's conclusion that "prohibiting defendants from using the LADWP expert information . . . would *unfairly prejudice* defendants *in preparing their defense,* thereby resulting in an injustice." (Italics added.) (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1261-1262 [245 Cal.Rptr. 682].)

Real parties in interest represented to the court that "the parts which form the basis for the LADWP expert analysis and conclusions have been altered such that defendants cannot duplicate those tests." As noted above, the question is not whether real parties can duplicate the tests that Maas performed but whether they have an equivalent opportunity to generate comparable evidence. (See, e.g., *Trade Center Properties, Inc. v. Superior Court, supra,* 185 Cal.App.2d at p. 411.) There is no evidence that they cannot do so.

First, Maas did not test every part real parties in interest sold to LADWP but only a representative sampling of those parts. Inasmuch as their settlement agreement provides for the replacement of real parties' parts with other parts, it is logical to infer that real parties could obtain from LADWP another representative sampling of the parts they sold to LADWP and perform tests upon those parts. Second, there is no evidence to support the conclusion that real parties could not obtain equivalent parts from the 160 cities that have not settled their claims. (See, e.g., *Mack v. Superior Court, supra,* 259 Cal.App.2d at p. 11.)

In short, there is no substantial evidence to support the superior court's conclusion that denial of access to LADWP's expert witness information would unfairly prejudice real parties' preparation of their defense. It follows that the trial court necessarily abused its discretion in so concluding. (*BP Alaska Exploration, Inc. v. Superior Court, supra,* 199 Cal.App.3d at pp. 1261-1262.)

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue forthwith commanding the superior court to set aside its order of March 27, 2002, permitting real parties in interest to use for any and all purposes the LADWP expert information provided to them pursuant to the court's October 31, 2001 order. The court is directed to enter a new and different order prohibiting real parties in interest from contacting, interviewing or retaining Exponent, Inc., or Rothenberg and prohibiting real parties from using for any purpose the expert data or reports of Maas or any expert materials derived from those reports or data unless and until petitioners

designate Maas to testify as an expert witness. Petitioners are to recover costs.

Ortega, J., and Mallano, J., concurred.

A petition for a rehearing was denied August 21, 2002.