Filed 10/2/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAMUEL ZAMUDIO JIMENEZ, | B297595 |
| Petitioner, | (Los Angeles County Super. Ct. No. VA036217) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Roger Ito,
Judge. Petition granted with directions.

Susan Garvey, Paula Fog, and Gillian F. Quandt for
Petitioner.

Jackie Lacey, District Attorney, Phyllis C. Asayama and Matthew Brown, Deputy District Attorneys for Real Party in Interest.

No appearance for Respondent.

_____

## INTRODUCTION

Petitioner Samuel Zamudio Jimenez, a death-row inmate, seeks a writ of mandate to vacate the superior court's discovery order in this habeas corpus proceeding.  In his petition for a writ of habeas corpus, petitioner claimed the jury at his capital trial impermissibly considered the opinion of at least one alternate juror in deciding his guilt.  The Supreme Court issued an order to show cause on this claim in the respondent superior court.  On the district attorney's motion on behalf of real party in interest, the superior court subsequently ordered petitioner to produce the statements of any alternate jurors he had interviewed.

In his petition for a writ of mandate, petitioner argues the court abused its discretion in ordering this discovery.  He claims the superior court was required to limit discovery to the scope of the criminal discovery statutes, which do not authorize the discovery sought here.  Alternatively, he maintains the discovery order violates the qualified attorney work-product protection.  In response, the district attorney argues the criminal discovery statutes do not constrain the superior court, and extends the qualified work-product

2

protection is unavailable in habeas proceedings. She also asserts that even if generally applicable, the work-product protection would not preclude the superior court's order.

We agree with the district attorney that discovery in habeas proceedings following an order to show cause may exceed the scope of the criminal discovery scheme. However, we hold that the qualified work-product protection applies to discovery beyond that scope and -- at this juncture of the proceedings -- precludes the superior court's discovery order. We therefore grant petitioner's requested relief.

## BACKGROUND

In 1997, a jury convicted petitioner of two counts of first degree murder, among other offenses, and found true multiple special circumstance allegations. The court imposed a death sentence. Following trial, the court sealed the jurors' identifying information and prohibited the parties from contacting them without authorization. On automatic appeal, the California Supreme Court affirmed petitioner's convictions and sentence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 333-334.)[1]

In 2010, petitioner filed an amended petition for a writ of habeas corpus, alleging, inter alia, juror misconduct

---

[1] The Supreme Court's opinion showed petitioner's name as "Samuel Zamudio" based on the information filed in the trial court; according to his habeas corpus petition, petitioner's true name is Samuel Zamudio Jimenez. (*In re Zamudio Jimenez* (2010) 50 Cal.4th 951, 954, fn. 3.)

3

during the guilt-phase deliberations. He claimed the jurors improperly considered the opinion of at least one alternate juror during their deliberations. Attached to his petition was the declaration of E.P., an alternate juror at petitioner's trial, stating that E.P. sat with the jurors during deliberations, that the jurors asked for her opinion on petitioner's guilt, and that E.P. replied she agreed he was guilty. In March 2018, the California Supreme Court ordered the People to show cause in the superior court why relief should not be granted on petitioner's claim of juror misconduct.

The district attorney filed a petition in the superior court requesting that before real party's return was due, the court contact the 11 surviving seated jurors (one had passed away) and the alternates by letter to ask if they were willing to speak with the parties' counsel. At a subsequent hearing, the court agreed to this request. During the hearing, the parties agreed that if any juror consented to speak to one party, that party would provide the juror's statement to the other. The district attorney asked that this disclosure requirement apply to any statements petitioner might previously have obtained from any jurors, seated or alternates, though petitioner represented his current counsel had interviewed no seated jurors.[2] The court indicated it

---

[2] Petitioner has not indicated, either in the superior court or before us, whether his counsel interviewed any alternate jurors other than E.P.

4

was inclined to order the discovery the district attorney had requested, but allowed petitioner to brief the issue.

Petitioner filed a brief opposing the requested discovery. He noted the criminal discovery statute applicable to defendants' pretrial disclosures, Penal Code section 1054.3, requires defendants to disclose the statements of only those witnesses they intend to call at trial.[3] Petitioner maintained section 1054.3 delineated the extent of the court's authority to order discovery of witness statements. He further argued the court's order was unauthorized under the civil discovery scheme, as it would require disclosure of his counsel's qualified work product. After considering petitioner's opposition, the court ordered petitioner "to provide all statements [his counsel had] obtained from the alternate jurors about whether or not they participated in jury deliberations . . . ."

---

[3] Penal Code section 1054.3, subdivision (a) requires a criminal defendant to disclose to the prosecuting attorney:

"(1) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(2) Any real evidence which the defendant intends to offer in evidence at the trial." Undesignated statutory references are to the Penal Code.

5

Petitioner filed this petition for a writ of mandate seeking relief from the superior court's discovery order. We issued an order to show cause why that ruling should not be vacated.

## DISCUSSION

We review a trial court's discovery order for abuse of discretion. (*Union Bank of California v. Superior Court* (2005) 130 Cal.App.4th 378, 388.) "However, when 'the propriety of a discovery order turns on . . . a question of law,' we 'determine the issue de novo.'" (*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 282, quoting *Gilbert v. Superior Court* (2014) 224 Cal.App.4th 376, 380.)

Petitioner claims the superior court should have limited its discovery order to the scope of the criminal discovery scheme. Alternatively, he asserts the court's discovery order violates the qualified attorney work-product protection. The district attorney maintains that neither the criminal discovery scheme nor the qualified work-product protection constrains discovery in habeas proceedings. She also argues that even if generally applicable, the work-product protection would not preclude the superior court's order. We discuss the parties' contentions in turn, beginning with the general scope of discovery in habeas corpus proceedings following an order to show cause.

6

A. *The Scope of Discovery Following an Order to Show Cause in Habeas Corpus Proceedings*

Generally, court-ordered discovery is unavailable in habeas corpus proceedings "unless and until a court issues an order to show cause." (*People v. Superior Court* (*Morales*) (2017) 2 Cal.5th 523, 528.) But once an order to show cause has issued, courts have discretion to order discovery as to issues on which the petition has stated a prima facie case. (See *In re Scott* (2003) 29 Cal.4th 783, 815 (*Scott*) [discovery order following order to show cause was not abuse of discretion]; *Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1243 [discovery following order to show cause "must be relevant to the issues upon which the petition states a prima facie case for relief"].) Such discovery may include disclosures by the People and the petitioner.[4] (*Scott*, at p. 814.)

---

[4] Section 1054.9, added to the Penal Code in 2003, affords convicted defendants in certain categories of cases, and under certain conditions, a right to limited discovery "upon the prosecution of a postconviction writ of habeas corpus . . . or in preparation to file that writ . . . ." (§ 1054.9, subd. (a).) Discovery under this provision includes only "materials to which the defendant would have been entitled *at the time of trial* . . . ." (*In re Steele* (2004) 32 Cal.4th 682, 695.) Section 1054.9 thus does not authorize discovery of evidence generated or uncovered after trial, such as new expert reports and new witness statements, which may be most relevant to the habeas proceeding. Indeed, our Supreme Court has stated the criminal discovery provisions, which are similar in scope to section 1054.9, "are a bad fit for

(Fn. is continued on the next page.)

7

The precise nature and scope of discovery following an order to show cause "has generally been resolved on a case-by-case basis." (*Scott, supra*, 29 Cal.4th at p. 813.) Habeas corpus "is a special proceeding and not entirely analogous to either [civil or criminal proceedings]." (*Id.* at p. 815, fn. 7.) Thus, the statutory provisions governing discovery in criminal trials do not apply to habeas corpus matters (*id.* at p. 813), "although they may provide guidance in crafting discovery orders on habeas corpus" (*Pearson, supra*, 48 Cal.4th at p. 572). Nor has our Supreme Court indicated that the civil discovery scheme governs discovery in habeas proceedings. Instead, the Court has tasked trial courts with "fashion[ing] a fair discovery rule." (*Scott*, at p. 814.)

---

habeas corpus" because the issues raised on habeas "may or may not relate to any of the evidence presented or not presented in the underlying criminal trial." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 572 (*Pearson*).) Nor does section 1054.9 authorize reciprocal discovery by the People.

Neither party argues section 1054.9 limits courts' power to order discovery following an order to show cause, and we conclude it does not. Affording defendants limited discovery as of right does not imply a rejection of the courts' discretion to order more extensive discovery following an order to show cause. (Cf. *In re Bryce C.* (1995) 12 Cal.4th 226, 233 [statute affording indigent appellants right to appointed counsel in certain appeals did not negate courts' discretion to appoint counsel for indigent respondents in similar appeals].) And we do not believe the Legislature intended to deny parties access to information that may be most relevant to the proceeding.

8

In *Scott*, the California Supreme Court appointed a referee to take evidence and decide factual questions in a capital habeas corpus proceeding. (*Scott, supra,* 29 Cal.4th at p. 792.) On the Attorney General's motion, the referee ordered the petitioner to provide certain discovery, including "[a]ll discovery allowed under Penal Code section 1054.3," which governs criminal defendants' pretrial disclosure obligations. (*Scott, supra,* at p. 812.) Challenging this ruling in the Supreme Court, the petitioner argued that section 1054.3, enacted in 1990 as part of the reciprocal discovery provisions of Proposition 115 (the Crime Victims Justice Reform Act), did not apply to habeas proceedings. (*Scott,* at p. 813.) The Supreme Court agreed that section 1054.3 applied only to the underlying criminal proceeding, but concluded that the "referee merely cited that section as a shorthand way to describe and limit the discovery he was ordering." (*Scott,* at p. 813.) Finding the referee acted within his discretion in ordering this discovery, the Court explained: "Penal Code section 1054.3 was a logical place for the referee to look to fashion a fair discovery rule. It requires the defendant to provide the names, addresses, and statements of witnesses, expert reports, and real evidence the defendant intends to offer. This requirement is not onerous and could greatly facilitate the reference hearing." (*Id.* at p. 814.)

The parties here agree the criminal discovery scheme would not authorize the superior court's discovery order. Section 1054.3 requires a criminal defendant to provide the

prosecution with relevant written or recorded statements only of those persons "he or she intends to call as witnesses at trial . . . ." (§ 1054.3, subd. (a)(1).) Our Supreme Court has interpreted this requirement to apply to any witness the defense "'reasonably anticipates it is likely to call.'" (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 375-376 & fn. 11, (*Izazaga*).) Absent an indication the defense reasonably foresees calling the witness, section 1054.3 imposes no disclosure obligation.[5] (See *ibid.*; *Sandeffer v. Superior Court* (1993) 18 Cal.App.4th 672, 678 [where counsel represented he had not yet decided whether to call witness, trial court exceeded its authority in ordering disclosures about that witness].) As petitioner notes, the district attorney has not yet filed a return, and the superior court has not yet determined whether an evidentiary hearing is warranted. Petitioner asserts he has therefore not determined the witnesses he would call at any potential future hearing.

Petitioner contends the superior court should have limited its discovery order to the allowance of section 1054.3.

---

[5] The Civil Discovery Act is broader in scope and does not condition the disclosure of witness statements on the party's intent to call the witness at trial. (See Code Civ. Proc., §§ 2017.010 [generally, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence"], 2031.010 [providing for document production].)

10

He acknowledges the criminal discovery statutes do not govern discovery in habeas proceedings but maintains that if a statute addresses the relevant material -- here, witness statements -- the court must "look[] no further." In support, petitioner notes *Scott*'s observation that section 1054.3 was a "logical place . . . to look to fashion a fair discovery rule" (*Scott*, *supra*, 29 Cal.4th at p. 814), and argues his approach accords with the rule that a specific statutory provision controls over a general one.

We disagree that the superior court was bound to adhere to the scope of discovery under section 1054.3. The California Supreme Court in *Scott* identified this provision as "a logical place for the referee to look," and found the referee acted within his discretion. (*Scott*, *supra*, 29 Cal.4th at p. 814.) The Court did not say section 1054.3 was the *only* logical source to consider in crafting a fair discovery rule or that the referee's discretion to order discovery was limited by it. *Scott* stands for the simple proposition that the criminal discovery statutes "may provide guidance in crafting discovery orders on habeas corpus." (*Pearson*, *supra*, 48 Cal.4th at p. 572, citing *Scott*, *supra*, at pp. 813-814.) Following *Scott*, the Court has recognized that the criminal discovery provisions "are a bad fit for habeas corpus" because they are geared toward the underlying trial, rather than the issues raised on habeas. (*Pearson*, *supra*, at p. 572.)

As for the rule that a specific statute prevails over a general one, it applies only when the two deal with the same subject and are inconsistent. (See Code Civ. Proc., § 1859

11

["when a general and [a] particular provision are inconsistent, the latter is paramount to the former"]; *San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 ["'A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates'"].)  The rule has no application here, where the relevant statutes -- section 1054.3 and the Civil Discovery Act -- govern different discovery schemes, and neither controls the dispute at issue.

In short, we conclude that under *Scott*, a trial court has discretion to exceed the bounds of the criminal discovery scheme in fashioning a "fair" discovery rule.  We therefore turn to consider the petitioner's invocation of the qualified attorney work-product protection.

## B. *The Qualified Attorney Work-Product Protection*

Petitioner contends that when requested discovery reaches beyond the scope of the criminal discovery scheme, the qualified attorney work-product protection, codified in Code of Civil Procedure section 2018.030, subdivision (b), applies to shield relevant materials from discovery.  He argues the qualified work-product protection precludes the superior court's discovery order.  The district attorney counters that this protection has no application in habeas proceedings and that in any case, it would not bar the court's discovery order.  As explained below, we conclude the

12

qualified work-product protection is available in habeas proceedings following an order to show cause, and that in the instant case, the rule operates to shield the relevant information from discovery at this stage of the proceedings.

### 1. *Availability of Qualified Attorney Work-Product Protection in Habeas Proceedings*

The work-product doctrine originated in common law and is now codified in Code of Civil Procedure section 2018.030.  (See *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 718 (*Laff*) [Code of Civil Procedure section 2018.030's predecessor was "intended to restate the common law regarding attorney work product"].)  It provides absolute protection to any "writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories . . . ."  (Code Civ. Proc., § 2018.030, subd. (a).)  To all other attorney work product, this doctrine provides only qualified protection:  such material "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."  (*Id.*, subd. (b).)  The work-product doctrine reflects "the policy of the state to . . . [¶] (a) [p]reserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases[; and] [¶] (b) [p]revent

13

attorneys from taking undue advantage of their adversary's industry and efforts." (Code Civ. Proc., § 2018.020.)

In *Coito v. Superior Court* (2012) 54 Cal.4th 480 (*Coito*), our Supreme Court held that "a witness statement obtained through an attorney-directed interview is, as a matter of law, entitled to at least qualified work product protection." (*Id.* at p. 497.) The Court based this holding on the "interests that the Legislature sought to protect in enacting the work product privilege." (*Id.* at p. 496.) The *Coito* court explained that when an attorney interviews witnesses and records their statements, "the attorney has expended time and effort in identifying and locating each witness, securing the witness's willingness to talk, listening to what the witness said, and preserving the witness's statement for possible future use." (Coito, s*upra*, 54 Cal.4th at p. 496.) Allowing opposing counsel to obtain these recorded statements would conflict with the Legislature's policy to prevent "free riding" on the adversary's industry and efforts. (*Ibid.*, citing Code Civ. Proc., § 2018.020, subd. (b).)

Additionally, the Court stated that "a default rule authorizing discovery of witness statements procured by an attorney would impede the Legislature's intent 'to encourage [attorneys] to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases.'" (*Coito*, *supra*, 54 Cal.4th at p. 496, quoting Code Civ. Proc., § 2018.020, subd. (a).) It explained: "If attorneys must worry about discovery whenever they take

14

a statement from a witness, it is reasonably foreseeable that fewer witness statements will be recorded and that adverse information will not be memorialized. . . . [W]ithout work product protection, 'no meaningful privacy exists within which an attorney may have sufficient confidence to thoroughly investigate and record potentially *unfavorable* matters.' This result would derogate not only from an attorney's duty and prerogative to investigate matters thoroughly, but also from the truth-seeking values that the rules of discovery are intended to promote." (*Coito*, *supra*, at pp. 496-497.)

Although the work-product doctrine is codified in the discovery provisions of the Code of Civil Procedure, several decisions have applied it in various additional contexts "[i]n order to further the policies underlying [it] . . . ." (*Laff*, *supra*, 25 Cal.4th at p. 718, citing *People v. Coddington* (2000) 23 Cal.4th 529, 606 [doctrine precluded trial use of work product even though it was not obtained through discovery]; *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 654-658 (*County of Los Angeles*) [opposing party cannot retain adversary's former expert witness without violating doctrine]; *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 648-649 [doctrine applies at trial as well as in pretrial discovery proceedings]; 70 Ops.Cal.Atty.Gen. 28, 33-35 (1987) [doctrine applies in grand jury proceedings].)

Before the enactment of Proposition 115, our Supreme Court had held that the work-product doctrine also applied

in criminal cases, citing its purpose in assuring "'the thorough preparation and presentation of each side of the case.'" (*People v. Collie* (1981) 30 Cal.3d 43, 59 (*Collie*), quoting *United States v. Nobles* (1975) 422 U.S. 225, 238.) Proposition 115, however, "expressly limit[ed] the definition of 'work product' in criminal cases to 'core' work product, that is, any writing reflecting 'an attorney's impressions, conclusions, opinions, or legal research or theories.'" (*Izazaga v. Superior Court, supra*, 54 Cal.3d at p. 382, fn. 19, italics omitted.) "Thus, the qualified protection of certain materials . . . applicable in civil cases, is no longer available in criminal cases." (*Ibid.*)

Petitioner argues the qualified privilege applies in habeas proceedings following an order to show cause if the discovery sought exceeds the scope of the criminal discovery scheme. We agree. Any discovery rule fashioned by the trial court in a habeas proceeding must be a "fair" one. (*Scott, supra*, 29 Cal.4th at p. 814.) In our view, while the court may go beyond the limits of the criminal discovery statutes, fairness demands the availability of the qualified work-product protection under those circumstances.

Though codified in the discovery provisions of the Code of Civil Procedure, the work-product doctrine originated in common law, and courts have applied it in a variety of contexts in both civil and criminal cases based on the doctrine's purposes. (See *Laff, supra*, 25 Cal.4th at p. 718 [collecting cases]; *People v. Collie, supra*, 30 Cal.3d at p. 59.) The purposes of the qualified work-product protection apply

16

equally in habeas proceedings. No less than counsel in ordinary civil cases, counsel investigating a habeas case expends time and effort worthy of protection from opposing counsel's appropriation. (Cf. Code Civ. Proc., § 2018.020, subd. (b); *Coito*, *supra*, 54 Cal.4th at p. 496.) And no less than in ordinary civil cases, a default rule authorizing discovery of the fruits of habeas counsel's investigation would discourage counsel from investigating unfavorable aspects of the case and from memorializing adverse information, thereby derogating from counsel's duty to investigate matters thoroughly as well as from the truth-seeking function of discovery. (Cf. Code Civ. Proc., § 2018.020, subd. (a); *Coito*, *supra*, at pp. 496-497.) Unlike the discovery order in *Scott*, a discovery rule permitting unfettered access to qualified attorney work product in all habeas cases would be onerous and would potentially hinder, rather than facilitate, a subsequent hearing. (Cf. *Scott*, *supra*, 29 Cal.4th at p. 814 [requirement that petitioner provide only the witness statements, expert reports, and real evidence that he "intend[ed] to offer" was not onerous and "could greatly facilitate the reference hearing"]; *Coito*, at pp. 496-497.)

In arguing the qualified protection should not be available, the district attorney emphasizes it is no longer available in criminal cases under Proposition 115. While recognizing proposition 115 does not apply to habeas proceedings, the district attorney contends those proceedings are "more criminal than civil" for purposes of the work-

17

product doctrine.  She asserts that under *Scott*, a trial court may "fashion reciprocal discovery orders for materials that would have been discoverable under section 1054.3," and argues "[i]t makes little sense to give materials more protection on habeas corpus than they would have enjoyed in the underlying criminal case."

What these contentions ignore, however, is that section 1054.3 would not authorize discovery of the relevant materials here.  As discussed, the scope of discovery under section 1054.3 is narrower than the scope allowed under the Civil Discovery Act, and it does not include statements of witnesses the defendant does not intend to call at trial.  A criminal defense counsel thus need not worry that interviewing an unfavorable witness would compel disclosure of that witness's statements to the prosecution. Proposition 115's rejection of the qualified work-product protection is therefore tempered by the more limited scope of discovery it authorizes.  But the discovery rule the district attorney offers would reach beyond the scope of both the criminal and civil discovery schemes, and would disregard the important interests protected by the qualified work-product protection without requiring any justification.  This rule would lead to unduly burdensome discovery, chill habeas counsel's investigations of unfavorable aspects of their clients' cases, and impede the truth-seeking function of the discovery procedures.  Such a discovery rule could hardly be described as "fair."  (See *Scott*, *supra*, 29 Cal.4th at p. 814.)

18

We therefore hold that where, as here, the discovery sought exceeds the scope of the criminal discovery scheme, the qualified work-product protection is available in habeas corpus proceedings following an order to show cause. Accordingly, we turn to consider the application of that protection here.

### 2. *Application of the Qualified Attorney Work-Product Protection*

Work product subject to qualified protection "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (Code Civ. Proc., § 2018.030, subd. (b).) The party seeking disclosure of qualified work product has the burden of establishing unfair prejudice or injustice justifying the disclosure. (*Coito, supra*, 54 Cal.4th at p. 499.) We review a trial court's application of the qualified work-product protection for abuse of discretion, and its determination that denial of disclosure would unfairly prejudice the party seeking it for substantial evidence. (*Armenta v. Superior Court* (2002) 101 Cal.App.4th 525, 536 (*Armenta*).)

"Unfair prejudice results where the party seeking discovery establishes that there exists "'no adequate substitute'" for the material [sought]. [Citation.] Conversely, when the party has equivalent opportunity to generate comparable evidence in its own case presentation,

19

there is no unfair prejudice." (*Armenta*, *supra*, 101 Cal.App.4th at p. 535.) A showing that no adequate substitute exists must be supported by competent evidence. (See *County of Los Angeles*, *supra*, 222 Cal.App.3d at p. 654, fn. 4 [hearsay evidence insufficient to defeat qualified work-product protection].)

As our Supreme Court has recognized, when an attorney interviews a witness and records his or her statement, opposing counsel is generally "free to interview the witness for himself or herself to find out what information the witness has that is relevant to the litigation." (*Coito*, *supra*, 54 Cal.4th at p. 496.) "Absent a showing that a witness is no longer available or accessible, or some other showing of unfair prejudice or injustice [citation], the Legislature's declared policy is to prevent an attorney from free riding on the industry and efforts of opposing counsel [citation]." (*Ibid.*)

The district attorney argues denial of the disclosure here would nevertheless unfairly prejudice the People in preparing a defense to petitioner's habeas claim. She asserts: "This case is already 20 years old. At least one of the sitting jurors has already passed away. Fading memories will make it difficult to get the same information today. There is no guarantee that any jurors will consent to further interviews."

The district attorney's concerns, while legitimate, are too speculative to override the qualified work-product protection. The superior court agreed to send a letter to all

20

jurors, asking if they would be willing to speak with counsel for the parties. The record does not reflect whether this letter was sent before the court issued its discovery order, or if so, whether any responses had been received. While it is possible the jurors and alternates will refuse to speak with counsel, it is also possible they will agree to do so. And while any responding alternates may not remember what they might have recalled at any previous interview with petitioner's counsel, they may also relay the same recollection of events or clarify that they never spoke with petitioner's counsel. Hypothetical difficulties are insufficient to show a witness is unavailable or to otherwise defeat the qualified work-product protection. (See *Coito*, *supra*, 54 Cal.4th at pp. 496, 499; *Armenta*, *supra*, 101 Cal.App.4th at p. 535; *County of Los Angeles*, *supra*, 222 Cal.App.3d at p. 654, fn. 4.) As petitioner notes, the district attorney may file a return disputing his allegations even without the requested information. (See *People v. Duvall* (1995) 9 Cal.4th 464, 485-486 [respondent filing return in habeas proceedings may satisfy pleading burden by alleging with specificity that despite acting with due diligence, crucial information is not readily available, and that there is good reason to dispute certain allegations or question the credibility of certain declarants].)

Nothing prevents the district attorney from again seeking this information if her attempts to obtain it independently prove unsuccessful. However, her current attempt to compel the disclosure is premature. Accordingly,

21

we conclude the superior court abused its discretion in ordering the discovery at this stage of the proceedings. (See *Armenta, supra,* 101 Cal.App.4th at p. 536.)

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting in part the district attorney's motion for discovery, and to issue a new order denying that motion without prejudice to its renewal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.